FILED IN UNITED STATES DISTRICT
COURT, DISTRICT OF UTAH

AUG 26 2005

MARKUS B. ZIMMER, CLERK
BY _____
DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

## CENTRAL DIVISION

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | MEMORANDUM DECISION |
| Plaintiff, | : | AND ORDER DENYING |
| vs. | : | DEFENDANT'S MOTION |
| | : | TO DISMISS |
| | : | |
| ODILON MENDOZA-VALESCO, | : | |
| | : | Case No. 2:05-CR-00296 W |
| Defendant. | : | |

Defendant Odilon Mendoza-Valesco ("Mendoza") is currently before the court under an indictment for illegal reentry. Mendoza has filed a motion to dismiss the indictment based on what he claims were affirmative misstatements of law by the Immigration Judge (IJ) during his 2001 deportation hearing. Mendoza claims that the IJ's "affirmative misstatements" rendered the immigration hearing fundamentally unfair in violation of the Due Process Clause of the United States Constitution. Accordingly, Mendoza claims, the deportation may not be the basis for a subsequent reentry prosecution, and this case should be dismissed.

Following the receipt and review of the pleadings filed on behalf of Mendoza and the government, the court heard oral argument on the matter on August 9, 2005. After thorough review and consideration of the pleadings submitted by the parties as well as the oral argument of counsel, the court enters the following memorandum decision and order.

BACKGROUND

On May 14, 2000, defendant Mendoza was arrested and subsequently charged in the District of Arizona, by way of complaint, with a violation of 18 U.S.C. § 1324(a)(1)(A)(ii) (Transportation of Aliens). On June 30, 2000, Francisco Leon was appointed as counsel for Mendoza. On July 26, 2000 the Grand Jury indicted Mendoza for violating 18 U.S.C. § 1324. On August 21, 2000, Mr. Leon filed several motions including motions to dismiss, for disclosure of exculpatory evidence, for discovery, for Jencks Act Material, and to suppress statements made by Mendoza as involuntary and taken in violation of Miranda. On September 21, 2000, Mendoza filed a motion to preclude the use of hearsay statements of material witnesses. On December 20, 2000, the District Court denied the motion to exclude the hearsay statements. On July 5, 2001, the District Court confirmed that Mendoza wished Mr. Leon to remain as counsel

By way of Affidavit, Mendoza states that he initially wanted to fight the charge against him, but his attorney, Mr. Leon, advised him to plead guilty. Mendoza claims that he was concerned about the effect a plea would have on his immigration status. Mendoza states that he asked Mr. Leon about the consequences of a guilty plea. Mendoza states he also asked Mr. Leon about a law he had heard about called "212( c)." Mendoza claims that Mr. Leon acknowledged he did not know much about 212( c), but he thought it applied to Mendoza's case and "could help," and he thought the conviction would not affect his permanent resident status. (Mendoza Aff. ¶ 6.) Believing that 212( c) applied to his situation and would prevent his deportation, Mendoza pled guilty. (Mendoza Aff. ¶ 7.) Mendoza states that he would not have plead guilty but for his attorney's misrepresentations about the application of 212 ( c). Mendoza Aff. ¶8.

2

On August 27, 2001, Mendoza pled guilty to the Indictment.  On that same date he was sentenced to time served (approximately 15 months) and two years supervised release. Thereafter, deportation proceedings began.

On October 31, 2001, the Immigration Court held a deportation hearing regarding Mendoza.  At the outset of the hearing, the IJ notified him that if he wished for legal counsel he could hire an attorney.  The IJ also provided a list of private attorneys willing to take immigration cases *pro bono*.  The IJ informed Mendoza that if he wanted additional time to hire an attorney, he had that right. The IJ also noted that Mendoza had two prior continuances to obtain counsel. The IJ told him that he had the right to see the evidence against him, to present evidence, and to appeal the decision of the IJ.  (Tr. of Deportation Hrg. at 1-4.)

Mendoza stated he wanted to represent himself.  He provided the IJ with a copy of his request for a copy of his criminal file.  The Immigration Service ("Service") contended that Mendoza had been legally present in the United States as a lawful permanent resident since 1992.

At the hearing, the Service presented evidence that Mendoza had a conviction for transportation of undocumented aliens in the District of Arizona, at Tuscon, Arizona.  The following exchanges occurred between the IJ and Mendoza:

*IJ*:      All right sir, is this allegation true, on August 27th of this year at the federal court in Tuscon, did the Court find you guilty of transportation of undocumented aliens?

*OM*:   Yes, Judge.

*IJ*:      Well, Mr. Mendoza, the Immigration Service is seeking to deport you because you have been convicted of a crime defined by federal immigration law as an aggravated felony.  Transportation of undocumented aliens under federal law, is an aggravated felony under the federal immigration statutes.  The law says that if a resident alien, such as yourself, is convicted of an aggravated felony, after their

3

admission as a permanent resident, then you are deportable from the United
States. Do you understand the charge?

*OM*:   Yes, sir.

Mendoza further discussed the felony conviction with the IJ:

*OM*:   I did tell the Judge at that court, I plead responsible to the charge but I did tell the
Judge that it was not for monetary reasons, it was for humanitarian reasons that I
did it.

*IJ*:   Mr. Mendoza, as I understand the criminal law and many years ago I used to be a
federal prosecutor in Federal District Court in West Texas. It no longer requires
the federal Government of the United States to prove that you transported
anybody for monetary reasons. Okay? Even if you transported them for
humanitarian reasons, it is still a violation of federal law.

The court then showed Mendoza a copy of his conviction:

*IJ*:   Okay, Mr. Mendoza this is a copy of the papers from the criminal court in
Arizona, which I'm going to mark . . . and I'm going to explain them to you,
Okay? It's a judgment in a criminal case. The term judgment is a legal word and
it means these are the findings or the decision of the criminal court judge. . . .

The IJ specifically discussed the definition of "aggravated felony:"

*IJ*:   . . . Under the definition of an aggravated felony, 101(a) 43, subparagraph N, any
violation of 1324(a)(1)(A) or (a)(2) is an aggravated felony regardless of any
sentence to incarceration or fines or anything and you have a conviction under
1324(a)(1)(A). So, even though you may have done this for humanitarian reasons,
because you were found guilty of this type of criminal behavior in the United
States, it automatically results in your deportability from the United States if you
are not a citizen of this country. Since you are not a citizen, this criminal
conviction establishes beyond a reasonable doubt that you are deportable from the
United States. Do you understand?

*OM*:   Yes, I do.

*IJ*:   All right, do you have any objections to the admission of this criminal judgment
or this paper to your case today? This is evidence. Do you have any reason to
believe that the evidence to believe that the evidence is false or wrong in some
way?

4

*OM*:   No.

Finally, the IJ discussed the consequences of the criminal conviction:

> *IJ*:   . . . I am required to find that you are deportable from the United States as charged.  And that does pose a serious problem for you.  Now, most of the time, relief from deportation is not available if you have an aggravated felony conviction.  There is a minor, very small exception in your case.  Transportation of undocumented aliens is not considered by federal law to be a crime of moral turpitude.  So, under some narrow, very narrow circumstances, you may be able to keep your visa if you are married to a citizen of the United States or if you have a child who is a citizen of the United States and is at least 12 years of age. . . .

The IJ asked Mendoza if he was married to a U.S. citizen or had children who were citizens of the United States.  Based on Mendoza's responses to these questions, the IJ concluded that "there is no relief from deportation available to you.  It is mandatory, it is not an optional thing . . . ."

The IJ went on to explain:

> *IJ*:   . . . Congress passed a law in 1996 that said, if you are a non-citizen, a resident alien, even, who's lived here all their life, and if you are convicted of this type of crime, except in extremely rare circumstances that don't apply to your case, the Courts are required to order your deportation from the United States without consideration of any humanitarian or other factors. . . . It is a very harsh law.

> *OM*:   So there is no law or code that would allow me cancellation of deportation?

> *IJ*:   You are not eligible for cancellation of removal because of your conviction. Because it is an aggravated felony; you don't qualify for cancellation of removal as a statutory bar or probation for cancellation.

> *OM*:   So there's nothing I can do?

> *IJ*:   Unless you can get a pardon from the President of the United States, there's nothing you can do.  At least not within my power to grant you.

The IJ then told Mendoza:

> *IJ*:   . . . If you can find a qualifying employer or relative to sponsor you for a visa once again. . . . But, that is not my decision to make in these proceedings.  Right now, unfortunately, deportation is mandatory.  And that is my decision, that you be

deported from the United States to Mexico today.

*OM*:   For how long?

*IJ*:   It is technically, for the rest of your life or until you can get a visa to return to the United States which I don't believe is a good possibility for you.

The IJ advised Mendoza of his appeal rights. He explained that the appeal was like getting a "second opinion." He also told Mendoza of the Florence Project, that could provide him with free legal advice and assistance in preparing an appeal. (Tr. of Deportation Hrg. at 17.)

Mendoza's appeal to the Board of Immigration Appeals was rejected. Mendoza was deported in March 2002. Some time later, Mendoza returned to the United States. In early 2005 he was arrested and indicted in the present case for illegal reentry.

Mendoza now moves to dismiss the indictment in this case. As grounds for his motion, Mendoza alleges that the October 31, 2001 removal proceedings were fundamentally unfair and invalid on Due Process grounds. More specifically, Mendoza claims that the IJ's statement–"unless you can get a pardon from the President of the United States, there is nothing you can do"–was materially false. Mendoza asserts that although a presidential pardon would eliminate the basis for the deportation, it was not true that this was his only option because he could have filed a collateral attack on the underlying conviction that was still less than one year old. Mendoza claims that as a result of the IJ's "affirmative misstatement" he was unaware of this option and was effectively prevented from challenging the underlying aggravated felony conviction.

The government asserts, however, that the IJ's statement, when considered in the appropriate context, was not a misstatement of the law. Accordingly, the government claims

6

there was no error in the removal proceedings.  The government also claims that Mendoza did

not suffer any prejudice as a result of the alleged misstatement because he was unlikely to prevail

on a motion for habeas relief.


## DISCUSSION

Under 8 U.S.C. § 1326, it is a crime for a deported or removed alien to enter, or attempt

to enter, or to be found in the United States.  An alien can defend against this charge by

challenging the deportation order upon which the charge is predicated.  To do so, however, an

alien must demonstrate that:

> (1) the alien exhausted any administrative remedies that may have been available to seek
> relief against the order;
> (2) the deportation proceeding at which the order was issued improperly deprived the
> alien of the opportunity for judicial review; and
> (3) the entry of the order was fundamentally unfair.

8 U.S.C. § 1326(d); see United States v. Mendoza-Lopez, 481 U.S. 828 (1987), United States v.

Aguirre-Tello, 353 F.3d 1199 (10th Cir. 2004).  A defendant seeking to dismiss an indictment for

illegal reentry after deportation has the burden of overcoming the presumption that the

deportation proceedings were conducted in a valid manner.  See United States v. Arevalo-

Tavares, 210 F.3d 1198, 1200 (10th Cir. 2000).  This court is required to afford the deportation

proceeding a "presumption of regularity."  United States v. Aguirre-Tello, 353 F.3d 1199, 1204

(10th Cir. 2004).

Mendoza's sole argument before this court is that the October 2001 deportation

proceedings were fundamentally unfair.[1]  See 8 U.S.C. § 1326(d)(3).  To establish fundamental

unfairness, Tenth Circuit precedent requires the defendant to show:  (a) that a fundamental error

occurred, and (b) prejudice resulting from that error.  United States v. Aguirre-Tello, 353 F.3d

1199, 1204 (10th Cir. 2004) (to reach the "ultimate conclusion" that deportation proceedings were

fundamentally unfair, a defendant must demonstrate not only a deficiency amounting to a due

process violation rendering the proceeding fundamentally unfair, but also that the deficiencies in

the proceedings caused him prejudice).

     With regard to the requirement of showing "fundamental error," Mendoza claims that the

error in this case was incorrect legal advice given by the IJ.  Mendoza describes this legal advice

as "an affirmative misstatement of law," indicating that Mendoza's sole avenue of relief from

removal was a presidential pardon.  Mendoza claims that the IJ's failure to inform him that he

might be able to challenge the underlying aggravated felony conviction by filing a § 2255 motion

with the Federal District court in Arizona rendered his removal proceedings fundamentally

unfair.  With regard to the requirement of showing "prejudice," Mendoza claims that he was

prejudiced by the IJ's incorrect legal advice because it effectively prevented him from pursuing

other options, including a motion pursuant to § 2255, on which he claims he probably would

have prevailed.

_____

[1]As to the other requirements of 1326(d), the government concedes that Mendoza has
exhausted his administrative remedies by appealing his case to the Bureau of Immigration
Appeals.  As for his claim that the proceedings improperly deprived him of judicial review,
Mendoza does not address this directly.  At the time of the deportation hearing, he was within the
one-year limitations period for habeas review.  Presumably, Mendoza would argue that the IJ's
failure to inform him of the option for habeas review deprived him of judicial review.
Nonetheless, the court's disposition of this case renders it unnecessary to address the exhaustion
and judicial review arguments.

Fundamental Fairness

It is an "undisputed proposition" that a potential deportee is entitled in his deportation proceeding to procedural due process under the Fifth Amendment, designed to ensure that the proceeding is fundamentally fair. Aguirre-Tello, 353 F.3d at 1204. Deportation proceedings are, of course, civil proceedings, not criminal ones, "and various constitutional protections associated with criminal proceedings therefore are not required." Michelson v. INS, 897 F.2d 465, 467 (10th Cir. 1990) (citing INS v. Lopez-Mendoza, 468 U.S. 1032, 1038-39 (1984)). "The Supreme Court has not further defined what fundamental fairness requires in a civil deportation proceeding context, but it has suggested that it prohibits "procedural errors . . . so fundamental that they may functionally deprive the alien of judicial review." Aguirre-Tello, 353 F.3d at 1204 (quoting United States v. Mendoza-Lopez, 481 U.S. 828, 839 n.17 (1987)).

Relying on this language from the Supreme Court, the Tenth Circuit has explained that "[w]hen facing deportation . . . aliens are entitled to procedural due process, which provides an opportunity to be heard at a meaningful time in a meaningful manner." Aguilera v. Kirkpatrick, 241 F3d 1286, 1292 (10th Cir. 2001). More recently, the Tenth Circuit further explained that, having received the opportunity to be heard at a meaningful time and in a meaningful manner, an alien is "entitled to nothing more." Aguirre-Tello, 353 F.3d at 1205. Guided by these principles, the Tenth Circuit has held that there is no constitutional right to be informed of the existence of discretionary relief for which a potential deportee might be eligible. Id. at 1204.[2]

---

[2]In United States v. Aguirre-Tello, the Tenth Circuit, sitting en banc, held that the failure of the IJ to specifically advise a defendant of possible relief from deportation charges was not a constitutional violation. Id. at 1205. The Circuit then went on to hold that "even assuming, arguendo, that there was some obligation to inform" the defendant of his right to discretionary relief, the IJ fulfilled it, even though the IJ provided the defendant with mistaken information

With these principles in mind, and for the reasons stated below, this court is of the opinion that Mendoza has failed to show that a fundamental error occurred in the October 2001 removal proceedings.

First, the statement of the IJ must be considered in the appropriate context. The context of the conversation at issue[3] was *relief from deportation*. At the time this diologue occurred, the IJ had already reviewed the facts and circumstances surrounding the underlying aggravated felony conviction. In what appears to have been a relatively thorough conversation, the IJ questioned Mendoza about the underlying conviction. Mendoza openly admitted to and acknowledged engaging in the statutorily proscribed conduct. Accordingly, Mendoza did not contest the admission of his conviction. (Tr. of Deportation Hrg. at 8-9, 12.)

In addition, the court finds it significant that throughout the entire conversation Mendoza never gave any suggestion, indication, or slightest hint that there might be some legitimate basis for challenging the underlying conviction. As indicated above, Mendoza openly admitted to the transportation of aliens. In addition, Mendoza did not make any comments suggesting ineffective assistance of counsel. Mendoza never indicated that he had been misinformed, misled, or disappointed by Mr. Leon's advice. Similarly, Mendoza never suggested that Mr. Leon represented that 212( c) might apply to his situation.

Thereafter, the conversation between the IJ and Mendoza shifted from the circumstances

_____

(that he was eligible for a "pardon" instead of a "waiver"). Id.

[3]The conversation at issue includes Mendoza's question, "So there's nothing I can do?" and the IJ's response, "Unless you can get a pardon from the President of the United States, there's nothing you can do. At least not within my power to grant you." (Tr. of Deportation Hrg. at 15.)

*surrounding* underlying conviction to the *consequences* of the criminal conviction. From that point forward, the dialogue between Mendoza and the IJ was premised on the IJ's reasonable and well-founded belief that Mendoza had a valid conviction for an aggravated felony. It was in this context that Mendoza asked about his options for deportation relief.[4]  With a valid criminal conviction, as admitted by Mendoza, and based on the information before the IJ, the IJ's response was an accurate statement of Mendoza's options. Defense counsel effectively concedes this in his brief, wherein he states: "The IJ at the deportation hearing correctly informed Mr. Mendoza that deportation relief was not available." (Mot. To Dismiss at 3.)

For these reasons, the court concludes that the IJ did not make an "affirmative misstatement" of law. Moreover, the court concludes that the IJ was not constitutionally obligated to suggest or offer legal theories that were neither suggested by nor supported by the facts before him. In other words, the IJ's failure to inform Mendoza that he might be able to challenge the underlying conviction in Arizona's federal district court did not rise to the level of fundamental unfairness.

Having concluded that no fundamental error occurred in the October 2001 deportation proceedings the court need not reach Mendoza's claim that he was prejudiced by the alleged

---

[4]Defense counsel appears to suggest that Mendoza's question about his legal options was with regard to challenging his underlying conviction. See Def's Mot. To Dismiss at 5 ("The fundamental unfairness in this case was the incorrect legal advice that the immigration judge gave Mr. Mendoza–that the only way to challenge the underlying conviction was to receive a Presidential pardon–when, in reality, Mr. Mendoza could have filed a 2255 motion to collaterally challenge his conviction.")  However, review of the transcript makes clear that Mendoza was not seeking advice about challenging his underlying conviction, rather Mendoza was inquiring as to whether, given the conviction, there was any avenue for cancellation of deportation. (Tr. of Deportation Hrg. at 14 ("So there is no law or code that would allow me *cancellation of deportation*?") (emphasis added).)

error.

Therefore, based on the foregoing and good cause appearing, IT IS HEREBY ORDERED

that defendant's motion to dismiss is DENIED.

DATED this _____26_____ day of August, 2005.

BY THE COURT:

_David K Winder_____

David K. Winder
Senior District Court Judge

## CERTIFICATE OF SERVICE

I hereby certify that on the _____26_____ day of August, 2005, I served copies of the foregoing by

United States mail, postage prepaid, and/or by inter-office delivery, addressed as follows:

Karin M. Fojtik
185 S. State Street, Suite 400
Salt Lake City, Utah 84111

Benjamin C. McMurray
46 West Broadway, Suite 110
Salt Lake City, Utah 84101

_____
Secretary